IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50838
_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

        v.

ABRAHAM P WALL

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

July 8, 1999

Before KING, Chief Judge, and SMITH and BARKSDALE, Circuit
Judges.

KING, Chief Judge:

     Defendant-appellant Abraham P. Wall challenges the sentence
imposed by the district court after he pleaded guilty to
possessing marijuana with intent to distribute in violation of 21
U.S.C. § 841(a)(1).  The issue for our decision is whether, for
purposes of sentencing Wall, the district court properly included
certain incidents as relevant conduct pursuant to United States
Sentencing Guideline § 1B1.3(a)(2).  We affirm Wall's conviction
but vacate his sentence, and remand for resentencing.

## I.  FACTUAL AND PROCEDURAL HISTORY

On March 20, 1997, defendant-appellant Abraham P. Wall was indicted on six counts relating to three marijuana seizures. Specifically, count one charged Wall with possessing marijuana with intent to distribute on April 30, 1992 in violation of 21 U.S.C. § 841(a)(1).  The remaining counts—including conspiracy to import marijuana with intent to distribute in violation of 21 U.S.C. § 846 (count two), importation of marijuana from Mexico into the United States in violation of 21 U.S.C. §§ 952(a) and 960(a)(1) (counts three and five), and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (counts four and six)—stemmed from seizures of marijuana from a former girlfriend of Wall's, Margaret Friesen, in April 1996 and March 1997.

The three incidents underlying the indictment include the following:

In April 1992, Wall was arrested near the United States Border Patrol checkpoint at Sierra Blanca, Texas in possession of approximately 0.1 kilograms of marijuana.[1]

---

[1]  The parties dispute the actual amount seized.  The government argues that the amount was five pounds, while Wall contends that the amount was 0.1 kilograms, or approximately four ounces.  For our purposes, the actual amount is irrelevant.  We use the 0.1 kilograms figure, however, because that is the figure used to calculate Wall's sentence in Wall's presentence report, which was adopted by the district court prior to imposing sentence.

We note that shortly after Wall's 1992 arrest, Wall pleaded guilty in state court to unlawful possession of marijuana and

2

Four years later, in April 1996, police stopped Friesen for a traffic violation in Arkansas and discovered 58 kilograms of marijuana in the tires of the pick-up truck she was driving (the 1996 offense).[2]  Two days earlier, the truck had crossed into the United States from Mexico at the Bridge of the Americas.  Friesen and Wall were co-owners of the truck.  Friesen subsequently pleaded guilty to possession of a controlled substance with intent to sell or deliver, and received a sentence of ten years of probation.

In March 1997, Friesen was arrested at the Presidio, Texas port of entry after the Border Patrol discovered 20.8 kilograms of marijuana in the gas tank of the pick-up truck she was driving (the 1997 offense).  Friesen had recently purchased the truck in Kansas from Isaac Reimer using money given to her by Wall.  According to Friesen, she then drove the truck to Mexico where Wall borrowed it for several hours.  Friesen claimed to have no knowledge of the marijuana concealed in the truck, and told the arresting officers that she suspected Wall of hiding the marijuana without her knowledge.  Friesen later received a

_____

received a sentence of four years of probation.

[2]  Friesen was traveling with a couple and their two children.

3

sentence of thirty-six months of imprisonment in connection with this incident.[3]

Pursuant to a plea agreement, on May 22, 1998, Wall pleaded guilty to count one, the charge pertaining to the April 1992 seizure of marijuana, and the government dismissed the remaining five counts. Wall's presentence report (PSR) recommended that the conduct underlying the dismissed counts be included as relevant conduct for purposes of determining the range of Wall's sentence under the United States Sentencing Guidelines (the guidelines or U.S.S.G.).[4]

The probation officer calculated Wall's base offense level by adding the amounts seized from Friesen at the time of her arrests in April 1996 (58 kilograms) and March 1997 (20.8 kilograms) to the amount seized from Wall at the time of his April 1992 arrest (0.1 kilograms). Thus, the amount of marijuana attributed to Wall totaled 78.9 kilograms, and Wall's corresponding base offense level was twenty-two. The PSR further recommended a two-level increase for Wall's role as an organizer,

---

[3] Her sentence was imposed by the same district court that sentenced Wall.

[4] In addition to the three incidents described above, Wall's PSR also described an incident in which $6000 was seized from Wall and Friesen in Kansas after a traffic stop in early 1996. A drug-detecting canine alerted to the presence of narcotics on the money. Wall and Friesen did not contest the seizure, and the money was later forfeited. This incident did not increase Wall's base offense level, although the district court did mention it at Wall's sentencing hearing.

leader, manager, or supervisor of criminal activity, pursuant to U.S.S.G. § 3B1.1(c), and a three-level decrease for Wall's acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b)—resulting in a total offense level of twenty-one and a guidelines range of thirty-seven to forty-six months of imprisonment.

Wall filed written objections to his PSR's inclusion of the 1996 and 1997 offenses as relevant conduct, and also objected in front of the district court at both of his sentencing hearings. He argued that the district court should consider only the amount of marijuana underlying the count to which Wall pleaded guilty, the 0.1 kilograms seized from Wall in April 1992, which would result in a base offense level of six and a guidelines range of up to six months of imprisonment.

Wall's first sentencing hearing occurred on July 21, 1998. After hearing argument concerning the relevant conduct issue, the district court postponed sentencing until it could hear testimony from Friesen concerning the 1996 and 1997 offenses. At Wall's second sentencing hearing, on August 4, 1998, Wall renewed his objection to the inclusion of the 1996 and 1997 offenses as relevant conduct. The district court overruled Wall's objections after hearing Friesen's testimony, and adopted the findings of the PSR. In reaching its conclusion, the district court made the following findings:

I find that the conduct outlined by Ms. Freison is believable. Her testimony was credible. I think the 1992 plea that Mr. Wall made was for marijuana. That marijuana came from Mexico. In subsequent years—two or three years later, marijuana is coming where from, Mexico. Who's originating this marijuana? Mr. Wall. It's been transported in vehicles across the Rio Grande River for distribution from Mexico. I find that Mr. Wall was the organizer; that he was instrumental in Ms. Freison becoming involved in carrying drugs; that there was relevant conduct at the time that Mr. Wall and Ms. Freison, who at that time was going by Mrs. Wall, were picked up in Kansas; that the $6,000 that she described was, in my opinion, proceeds from the sale of a controlled substance.

Evidently, Mr. Wall agreed with this. There was no quarrel with him about the forfeiture of that money. I find that the time that Ms. Freison was arrested in Arkansas was because of that relevant conduct by Mr. Wall in sending her with this load of marijuana into Arkansas and that the money that she had was forfeited. The dope she had that was forfeited up there, she paid for that by pleading guilty to an offense for which she received probation.

I also find that in connection with her conviction where she received a total of 36 months, that that marijuana, also, was attributable to—it was in a pickup that had been delivered to Mexico by Ms. Freison at the behest of Mr. Wall. . . .

Insofar as the time is concerned, Mr. Freison [sic] did plead guilty to a 1992 offense. . . . By the same taken [sic], he's charged with other offenses in there. And in looking at the big picture, I don't think the statute of limitations governs this deal at all. The Fifth Circuit has held that relevant conduct is not guided by or controlled by the statute of limitations. I find that the correct total offense level in this case is a 21, a criminal history category of one.

Based on a total offense level of twenty-one and a criminal history category of I, the district court sentenced Wall to forty-six months of imprisonment and three years of supervised release, and also imposed a $100 special assessment. Wall filed his timely notice of appeal on August 11, 1998.

## II. STANDARD OF REVIEW

We review a district court's interpretation of the guidelines de novo, and its factual findings for clear error. See United States v. Peterson, 101 F.3d 375, 384 (5th Cir. 1996); United States v. Carreon, 11 F.3d 1225, 1230 (5th Cir. 1994). A district court's determination of what constitutes relevant conduct for purposes of sentencing is reviewed for clear error. See Peterson, 101 F.3d at 384; United States v. Bryant, 991 F.2d 171, 177 (5th Cir. 1993).

## III. DISCUSSION

A defendant convicted of a drug offense is sentenced based on the amount of drugs involved in the offense. See U.S. SENTENCING GUIDELINES MANUAL § 2D1.1 (1998). The guidelines provide that in calculating the offense level the district court may consider other offenses in addition to the acts underlying the offense of conviction so long as those offenses constitute relevant conduct as defined in the guidelines. See id. § 1B1.3. As we have recognized, "the base offense level can reflect quantities of drugs not specified in the count of conviction if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." United States v. Moore, 927 F.2d 825, 827 (5th Cir. 1991) (internal quotation marks omitted). The defendant need not have been convicted of

the other offenses before they may be considered relevant conduct.  See id.

The guidelines define "relevant conduct" to include "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S. Sentencing Guidelines Manual § 1B1.3(a)(2).  "Common scheme or plan" is defined as two or more offenses that are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi."  Id.  § 1B1.3 application note 9(A).  "Same course of conduct" is defined as follows:  "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses."  Id. § 1B1.3 application note 9(B). Factors to consider in making this determination include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses."  Id.  "When one of the above factors is absent, a stronger presence of at least one of the other factors is required."[5]  Id.

_____

[5] The application note thereafter provides:  "For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal

Wall argues that the district court erred in calculating his offense level by considering the 1996 and 1997 offenses as relevant conduct. According to Wall, the 1996 and 1997 offenses were not part of the same common scheme or plan as the 1992 offense to which he pleaded guilty because the two sets of offenses lacked common accomplices, common purposes, and similar modus operandi. Wall further contends that the 1996 and 1997 offenses were not part of the same course of conduct as the 1992 offense because the later offenses were temporally remote from the 1992 offense, were not similar to the 1992 offense, and did not evince a pattern of regularity.

We agree that the 1996 and 1997 offenses were not part of the same "common scheme or plan" as the 1992 offense. Id. application note 9(A); see United States v. Hill, 79 F.3d 1477, 1482 (6th Cir. 1996) (noting that several courts have found that a "'common scheme or plan' requires that acts 'be connected together by common participants or by an overall scheme' whereas the 'same course of conduct' concept looks to 'whether the defendant repeats the same type of criminal activity over time'") (quoting United States v. Silkowski, 32 F.3d 682, 687 (2d Cir. 1994) (further citations omitted)). Although the offenses arguably shared the common general purpose of importing marijuana for distribution in the United States, because Friesen testified

proximity." Id.

that she did not meet Wall until 1995, the offenses did not share similar accomplices.  Moreover, there is insufficient evidence of a distinctive modus operandi connecting the later offenses, which involved large quantities of marijuana concealed in pick-up trucks, to the 1992 offense, which involved a relatively small amount of marijuana secreted in Wall's car.

Thus, we must examine whether the 1996 and 1997 offenses can be considered part of the "same course of conduct" as the 1992 offense.  U.S. SENTENCING GUIDELINES MANUAL § 1B1.3 application note 9(B).  As described above, this depends on "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses."  Id.

The time interval between the 1992 offense and the 1996 and 1997 offenses is considerable.  No evidence in the record indicates that Wall continued his drug activities between his 1992 arrest and the offenses involving Friesen which began in early 1996.  Cf. Moore, 927 F.2d at 828 (finding that intervening arrest for marijuana possession helped connect defendant's earlier drug activity to his offense of conviction such that the earlier drug activity could be considered relevant conduct).  Although "[t]here is no separate statute of limitations beyond which relevant conduct suddenly becomes irrelevant," id., we find that the incidents in the instant case are separated by an unprecedented lapse of time for a case involving drug distribution.  Cf. United States v. Powell, 124 F.3d 655, 666

10

(5th Cir. 1997) (finding that defendant's state tax evasion satisfied the element of temporal proximity for purposes of including it as relevant conduct because it occurred during the same period of time as the federal tax evasion for which defendant was convicted), cert. denied, 118 S. Ct. 1082 (1998); Bryant, 991 F.2d at 177 (finding temporal proximity of approximately two months helped support district court's relevant conduct finding in drug distribution case); United States v. Bethley, 973 F.2d 396, 400-01 (5th Cir. 1992) (finding that cocaine distribution activity that occurred monthly for the six months preceding the offense of conviction could be considered relevant conduct); Moore, 927 F.2d at 826, 828 (finding that amphetamine seized five months prior to offense of conviction could be considered relevant conduct). Various courts have found that a period of separation of over one year negated or weighed against the temporal proximity of the offenses. See Hill, 79 F.3d at 1484; United States v. Maxwell, 34 F.3d 1006, 1011 (11th Cir. 1994). We conclude that temporal proximity is lacking in this case.

Where the temporal proximity of the offenses is nonexistent, the other factors must be stronger. See U.S. SENTENCING GUIDELINES MANUAL § 1B1.3 application note 9(B) ("[W]here the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity."). We must

11

therefore consider "'whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind.'" Maxwell, 34 F.3d at 1011 (quoting United States v. Sykes, 7 F.3d 1331, 1336 (7th Cir. 1993)).

We conclude that there are significant differences between the 1992 offense and the 1996 and 1997 offenses. Notably, there is no evidence that the marijuana that formed the basis for the 1996 and 1997 offenses shared a common source, supplier, or destination with the marijuana involved in the 1992 offense. Cf. United States v. Jackson, 161 F.3d 24, 29 (D.C. Cir. 1998) (finding that similarity of the offenses justified earlier offense's inclusion as relevant conduct where both offenses involved large amount of drugs, were brokered by the same person, and involved a common source). Moreover, while the 1996 and 1997 offenses are arguably similar to each other, their modus operandi differs from that of the 1992 offense. The 1996 and 1997 offenses involved large loads of marijuana secreted in the wheels and gas tank of two pick-up trucks driven across the border by Friesen. In contrast, there is no evidence in the record of where the much smaller 1992 load was hidden in Wall's car. Furthermore, while Friesen was involved in the 1996 and 1997 offenses, nothing indicates that Wall had accomplices in 1992.

12

Friesen herself could not have been a participant, having only met Wall in 1995.

In short, the two sets of offenses do not share many similarities other than that they both involved marijuana.[6] As the Eleventh Circuit has stated,

> We do not think that two offenses constitute a single course of conduct simply because they both involve drug distribution. To so conclude would be, in the words of the Fourth Circuit,
>
> > to describe [the defendant's] conduct at such a level of generality as to eviscerate the evaluation of whether uncharged criminal activity is part of the "same course of conduct or common scheme or plan" as the offense of conviction. With a brushstroke that broad, almost any uncharged criminal activity can be painted as similar in at least one respect to the charged criminal conduct.

Maxwell, 34 F.3d at 1011 (quoting United States v. Mullins, 971 F.2d 1138, 1145 (4th Cir. 1992)); see also Hill, 79 F.3d at 1484 (stating that where two drug transactions are separated by more than one year, a relevant conduct finding generally may not be premised on the sole similarity that the transactions involved the same drug).

Both parties cite United States v. Jackson, 161 F.3d 24 (D.C. Cir. 1998), in support of their respective positions. In Jackson, the court found that a 1992 drug transaction properly constituted relevant conduct within the meaning of U.S.S.G.

---

[6] Nor is there a pattern of regularity in light of the lengthy separation between the 1992 offense and the 1996 and 1997 offenses and the lack of evidence of any illicit conduct between the two.

13

§ 1B1.3(a)(2) for purposes of sentencing the defendant for a similar 1996 drug transaction. See id. at 30. The court reasoned that although both the temporal and regularity prongs were weak, the strength of the similarity prong justified the inclusion of the 1992 offense as relevant conduct. See id. at 29-30.[7] The court distinguished several cases—in which other courts had held that an earlier offense separated by a lengthy time interval from the offense of conviction was not part of the same course of conduct—on the ground that the similarity of the offenses in those cases was weaker than in the case before it. See id. at 29 (citing United States v. Fermin, 32 F.3d 674, 681 (2d Cir. 1994); United States v. Mullins, 971 F.2d 1138 (4th Cir. 1992); United States v. Kappes, 936 F.2d 227, 231 (6th Cir. 1991)). Although the court conceded that a "four-year time interval makes the temporal factor weak, and in many cases might be difficult for another factor to outweigh," ultimately it concluded that the similarity between the offenses justified the relevant conduct finding in that case. Id. at 30. The court

---

[7] The court described the similarity of the offenses as follows:

> Here the "degree of similarity" between the 1992 and 1996 deals is strong. Each was brokered by Rayful Edmond; each involved, either actually or in Jackson's perception, a transaction between Jackson and the Trujillo-Blancos; each involved a meeting with an intermediary in the United States; and each involved the transfer of large quantities of cocaine.

Id. at 29.

14

noted, however, that "[a] 'course of conduct' is not a limitless concept, and the limits are approached in this case." Id.

In the case at bar, the limits have been exceeded. The temporal distance between the offenses, the lack of regularity, and the weak similarities between the offense of conviction and the later offenses compel us to conclude that the later offenses cannot properly be considered as relevant conduct for purposes of sentencing Wall. We therefore conclude that the district court clearly erred by including the 1996 and 1997 offenses as relevant conduct in sentencing Wall for the 1992 offense. Because this error was not harmless, we vacate Wall's sentence and remand for resentencing.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM Wall's conviction but VACATE Wall's sentence and REMAND for resentencing in conformity with this opinion.