IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-40336
_____


UNITED STATES OF AMERICA

                              Plaintiff-Appellee

     v.

GILBERTO AVILA, JR

                              Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
No. C-01-CR-323-1

October 23, 2002

Before KING, Chief Judge, and JOLLY and HIGGINBOTHAM, Circuit

Judges.

PER CURIAM:[*]

     Defendant Gilberto Avila, Jr. appeals from the district

court's sentencing determination that his prior uncharged

marijuana offense was relevant in the base offense calculation

under U.S. SENTENCING GUIDELINES MANUAL § 1B1.3 (2001).[1]  For the

_____

     [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

     [1]    Avila was sentenced under the 2001 version of
Sentencing Guidelines, which is the current version.

following reasons, we AFFIRM.

## I.  FACTUAL AND PROCEDURAL HISTORY

On October 12, 2001, Gilberto Avila, Jr. ("Avila") drove a Freightliner tractor/trailer to the border patrol checkpoint in Sarita, Texas.  He was joined by passenger Ismael Soza.  During a routine immigration stop, a drug-detecting dog alerted federal agents to the presence of narcotics in Avila's trailer.  A search of the vehicle revealed 214 bundles of marijuana, weighing 905 kilograms in total.  The bundles were wrapped with brown packing tape and were hidden among boxes of limes and watermelons near the front of the trailer.  Avila agreed to cooperate with federal authorities and negotiated a plea agreement.

Just about a year before, Avila had been involved in a similar incident along the Mexico/Texas border.  On October 28, 2000, Avila drove a Freightliner tractor/trailer to the border patrol checkpoint in Falfurrias, Texas.  A drug-detecting dog directed agents to Avila's trailer, and a search revealed 67 bundles of marijuana, weighing 659 kilograms in total.  The marijuana was wrapped in brown contact paper and wallpaper and hidden among boxes of watermelons near the front of the trailer.

Avila was indicted for the 2001 offense and pled guilty to possession with intent to distribute 905 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B) (2000).  Before the district court accepted Avila's plea, it advised Avila that

his 2000 marijuana offense could be used as relevant conduct during sentencing. The Presentence Report ("PSR") recommended a base offense level of 32, counting as relevant 905 kilograms of marijuana from the 2001 offense and 659[1] kilograms of marijuana from the uncharged 2000 offense. Avila objected to the inclusion of the 2000 offense as relevant conduct. Ths district court accepted Avila's stipulation to the facts in the PSR and heard testimony of a federal agent regarding the 2000 offense. The district court then adopted the PSR's finding that the 2000 offense constituted relevant conduct and sentenced Avila to 87 months' imprisonment followed by five years of supervised release.

Avila appeals his sentence, claiming that the district court erred in considering the 2000 offense relevant conduct under U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(2) (2001). Avila argues that the two offenses were not part of a "common scheme or plan" and were not part of the "same course of conduct."

## II. STANDARD OF REVIEW

We review a district court's application of the Sentencing Guidelines de novo and the district court's findings of fact for clear error. United States v. Jefferson, 258 F.3d 405, 413 (5th

---

[1] Though the PSR incorrectly lists the amount of marijuana from the 2000 offense as 695 kilograms, the PSR properly calculated the offense level based on 659 kilograms and the case agent testified during sentencing that the amount was 659 kilograms.

Cir.), cert. denied, 122 S. Ct. 379 (2001).  A district court's finding as to what constitutes relevant conduct for purposes of sentencing is a factual finding reviewed for clear error.  United States v. Ocana, 204 F.3d 585, 589 (5th Cir.), cert. denied, 121 S. Ct. 192 (2000).

A determination is clearly erroneous when, after a review of the record, "the reviewing court is left with the 'definite and firm conviction that a mistake has been committed.'"  Jackson v. OMI Corp., 245 F.3d 525, 528 (5th Cir. 2001) (quoting McAllister v. United States, 348 U.S. 19, 20 (1954)).  "If the district court's account of the evidence is plausible . . . the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."  Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985).

### III.  DISCUSSION

Arana challenges the base offense level used to calculate his sentence, claiming his October 28, 2000 offense should not have been considered "relevant conduct" under the Sentencing Guidelines.  First, he contends that the two events were not part of a "common scheme or plan."  Second, he argues that the two events were not part of the "same course of conduct."

Under the Sentencing Guidelines, Avila's base offense level depends on the amount of drugs involved in the offense.  U.S.

SENTENCING GUIDELINES MANUAL § 2D1.1 (2001). A district court may include amounts from a prior uncharged drug offense if the previous offense constitutes "relevant conduct" under § 1B1.3. U.S. SENTENCING GUIDELINES MANUAL § 1B1.3 (2001); see also United States v. Vital, 68 F.3d 114, 117 (5th Cir. 1995) ("It is well established that a defendant's base offense level for the offense of conviction must be determined on the basis of all 'relevant conduct' as defined in U.S.S.G. § 1B1.3."). Relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(4) (2001).

The Commentary to the Sentencing Guidelines further defines "common scheme or plan" and "same course of conduct."[2] The Commentary notes that "'[c]ommon scheme or plan' and 'same course of conduct' are two closely related concepts." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3 cmt. n.9 (2001). For two offenses to be part of a common scheme or plan, "they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3 cmt. n.9(A) (2001). Offenses are part of the same course of conduct if "they

---

[2] The Commentary is given controlling weight if it is not plainly erroneous or inconsistent with the Sentencing Guidelines. United States v. Delgado-Nunez, 295 F.3d 494, 498 (5th Cir. 2002).

are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3 cmt. 9(B) (2001). Factors relevant to determining if the offenses make up the same course of conduct are "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses"; "[w]hen one of the above factors is absent, a stronger presence of at least one of the other factors is required." Id.

We consider first whether the district court clearly erred in finding that the two offenses were part of a common scheme or plan. The Guidelines suggest that we look to factors such as common victims, common accomplices, common purposes, or similar modus operandi. In this case, Avila was an experienced truck driver who twice transported large quantities of drugs from Mexico to Texas. In both cases, Avila was transporting over one thousand pounds of marijuana in a tractor/trailer, using watermelons to evade detection. The marijuana was hidden among the watermelons, near the front of the trailer, and was wrapped in bricks. Avila was the driver both times; in 2001, he was accompanied by a passenger. The two incidents took place in the same area in Texas. Both occurred in October.

Assessing Avila's conduct using the factors set forth in the Sentencing Guidelines, we find that district court did not

clearly err in finding the two offenses to be part of a common scheme or plan.[3] The Guidelines require that the incidents be "substantially connected to each other by at least one common factor." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3 cmt. 9(A) (2001). Here, Avila used a similar modus operandi in both 2000 and 2001: he drove large quantities of marijuana from Mexico into Texas in a Freightliner tractor/trailer and attempted to evade detection using watermelons as a cover. See Powell, 124 F.3d at 665-66 (upholding a finding of a common scheme or plan when a defendant used the same modus operandi to evade state and federal excise taxes on gasoline). Though the district court did not make any findings as to the victims or any particular criminal purpose, the offenses share the general criminal purpose of transporting large quantities of marijuana into the United States. The two incidents occurred about a year apart in the same geographical area. The many similarities between the two offenses, including a nearly identical modus operandi, show that the district court had sufficient evidence to conclude that the two offenses were part of a common scheme or plan. See United States v. Anderson, 174 F.3d 515, 526-28 (5th Cir. 1999) (affirming that two offenses were part of a common scheme or plan when they shared a common

---

[3] "Particularly in drug cases, this circuit has broadly defined what constitutes 'the same course of conduct' or 'common scheme or plan.'" United States v. Bryant, 991 F.2d 171, 177 (5th Cir. 1993).

criminal purpose and similar modus operandi).

Avila argues that under United States v. Wall, 180 F.3d 641 (5th Cir. 1999), his marijuana offenses were not part of a common scheme or plan. In Wall, we held that a series of three marijuana offenses were not part of a common scheme or plan. See 180 F.3d at 645-46. The offenses were: (1) possession of 0.1 kilograms of marijuana, found in a car during a border stop in Texas; (2) possession of 58 kilograms of marijuana, found in the tires of a pick-up truck during a traffic stop in Arkansas; and (3) possession of 20.8 kilograms of marijuana, found in the gas tank of a pick-up truck during a border stop in Texas. Id. at 642-43. We found no common scheme or plan because the incidents did not involve the same accomplices and they shared only "the common general purpose of importing marijuana for distribution in the United States." Id. at 645. We also found "insufficient evidence of a distinctive modus operandi" because the incidents involved different vehicles and different quantities of marijuana. Id. This case is distinguishable from Hall because of the evidence of Avila's modus operandi. In both incidents, Avila drove the same type of vehicle containing over one thousand pounds of marijuana and using a watermelon cover from Mexico to Texas. Avila notes Wall's warning that two incidents are not part of a common scheme or plan simply because both involve marijuana. See id. at 646-47. In this case, however, Avila's

two offenses share many similarities aside from drug type, including a nearly identical <u>modus operandi</u>.

Avila also suggests that our holding in <u>United States v. Miller</u>, 179 F.3d 961 (5th Cir. 1999), counsels against finding a common scheme or plan.[4]  In <u>Miller</u>, we considered three incidents: (1) a border stop where Miller was following a motor home carrying 400 pounds of marijuana; (2) a traffic stop involving Miller where 5 kilograms of cocaine were recovered; and (3) Miller's sale of 2 kilograms of cocaine in a grocery store parking lot.  179 F.3d at 962-63.  We found Miller's offenses were not part of a common scheme or plan because they "did not involve common victims or accomplices, share similar <u>modus operandi</u>, or serve a common purpose beyond the fact that they were drug transactions."  <u>Id.</u> at 966.  Again, the present case is distinguishable: Avila used the same <u>modus operandi</u> to transport the same relative amount of the same drug from Mexico to Texas.[5]  The district court thus did not err in finding a common scheme or plan.

---

[4]  <u>Miller</u> concerned the application of § 5C1.2 of the Sentencing Guidelines, which also includes the term "relevant conduct."  179 F.3d at 963-64.  In <u>Miller</u>, we looked to our § 1B1.3 cases for guidance in defining "relevant conduct."  <u>Id.</u> at 964-65.

[5]  Avila reads <u>Miller</u> as requiring us to define <u>modus operandi</u> narrowly.  <u>Miller</u> only states, however, that we should not broadly define the term "relevant conduct" as "any other drug activity."  179 F.3d at 966 n.8.

Because we uphold the district court's sentencing determination based on the finding that the two incidents were part of a common scheme or plan, we do not consider whether the two incidents also qualify as part of the same course of conduct.

## IV.  CONCLUSION

For the foregoing reasons, the district court's sentencing determination is AFFIRMED.