United States Court of Appeals
Fifth Circuit

**F I L E D**

December 2, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 04-50912

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**BRADLEY SCOTT WROBLEWSKI,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Western District of Texas
(3:03-CR-1958-ALL-KC)**

_____

Before JOLLY, BEAM,[*] and BARKSDALE, Circuit Judges.

PER CURIAM:[**]

Bradley Scott Wroblewski pleaded guilty to possessing marijuana with intent to distribute. Primarily at issue is whether the district court clearly erred in finding Wroblewski's prior marijuana trafficking constituted relevant conduct for sentencing purposes. **CONVICTION AFFIRMED; REMANDED for RESENTENCING**, pursuant to ***United States v. Booker***, 125 S. Ct. 738, 756 (2005) (holding that any fact, other than a prior conviction, needed to support a

_____

[*]Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sentence exceeding the maximum authorized by the facts, must be based on facts either admitted by the defendant or proved to a jury).

## I.

On 3 October 2003, Wroblewski entered the United States Border Patrol Checkpoint in Desert Haven, Texas, in a rental truck. He consented to a non-intrusive canine sniff of his truck. A canine alerted Border Patrol Agents to a controlled substance; they discovered approximately 675 kilograms of marijuana. In addition, Wroblewski provided Drug Enforcement Agency Agents with a detailed explanation of his involvement since 1999 or 2000 in a drug-trafficking organization with Ricardo Estrada and stated that he was not the only Estrada brother for whom Wroblewski had distributed marijuana.

From 1997 to 1998, Wroblewski drove between 12 and 15 loads of marijuana for Victor Estrada, Ricardo Estrada's brother. This had developed after another Estrada brother, Sergio Estrada, had approached Wroblewski in 1997 and asked if he would like to make money by driving to El Paso, Texas, and returning to Florida with a load of marijuana. Sergio Estrada told Wroblewski that his brother, Victor Estrada, would pay Wroblewski $500 to drive to El Paso and another $5,000 for transporting the marijuana back to Florida.

Wroblewski outlined his routine with Victor Estrada: he drove through the Desert Haven Border Patrol checkpoint unloaded, while

2

Victor Estrada drove his vehicle, loaded with marijuana, past the checkpoint on a dirt road. They would meet and reload the marijuana into Wroblewski's vehicle. Wroblewski then drove the loads to various destinations: Orlando, Florida; Oklahoma City, Oklahoma; Chicago, Illinois; Des Moines, Iowa; Kansas City, Missouri; Tulsa, Oklahoma; and Wichita, Kansas. The initial loads contained 200 pounds of marijuana and increased in weight after Wroblewski successfully transported several loads.

On a trip in 1998, Wroblewski kept approximately 41 kilograms from a load; sold that amount; and kept the proceeds. After this incident, Victor Estrada did not ask Wroblewski to transport marijuana.

Sometime in 1999, Wroblewski contacted Victor Estrada in an attempt to resume their trafficking relationship; he declined. Victor Estrada's younger brother, Ricardo Estrada, soon contacted Wroblewski, however, and showed an interest in his services. Wroblewski and Ricardo Estrada formed a relationship whereby Wroblewski would transport various quantities of marijuana (from 600 to 1,300 pounds) from El Paso to Chicago.

Wroblewski was indicted for knowingly and intentionally possessing, with intent to distribute, 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii). He pleaded guilty in early 2004.

In addition to the sentence being based on the marijuana in the truck when he was stopped on 3 October 2003 (approximately 675

3

kilograms), Wroblewski's presentence investigation report (PSR) recommended, as relevant conduct, holding Wroblewski accountable for the approximately 1400 kilograms (200 pounds per load times 12 to 15 loads) of marijuana he transported for Victor Estrada in 1997 and 1998 as part of the same drug trafficking organization. These amounts combined for a total of approximately 2,075 kilograms of marijuana. Accordingly, the recommended base offense level was 32, based on possession of, with intent to distribute, between 1,000 and 3,000 kilograms of marijuana. (Had it included only the marijuana for the charged offense, the base offense level would have been 28.) U.S.S.G. § 2D1.1(c) (2003). Because of reductions to that level, the sentencing range was 51 to 63 months.

Prior to sentencing, Wroblewski objected to his prior trafficking being relevant conduct; at sentencing, he challenged the speculative nature of using prior conduct to assess his sentence and objected under the Supreme Court's then-recent decision in *Blakely v. Washington*, 124 S. Ct. 2531, 2536 (2004) (holding that any fact, other than a prior conviction, used to increase a defendant's penalty beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt to avoid a Sixth Amendment violation). The district court imposed a sentence of, *inter alia*, 55 months incarceration.

This initial sentence was vacated; a second sentencing hearing was held to discuss the impact of *Blakely*. Wroblewski's counsel

4

also discussed the use of Wroblewski's prior trafficking as relevant conduct.  These objections were overruled, and Wroblewski was sentenced, *inter alia*, to the sentencing-range minimum of 51 months incarceration.

## II.

Wroblewski raises two issues.  He claims ***Booker*** error because he was sentenced under a mandatory-Guidelines scheme and contests the use of his prior marijuana trafficking as relevant conduct.

### A.

Wroblewski's ***Blakely*** objection preserves ***Booker*** error.  ***United States v. Pineiro***, 410 F.3d 282, 285-86 (5th Cir. 2005).  The Government concedes such error.

Wroblewski maintained his sentence was enhanced improperly by facts to which he had not pleaded guilty.  The district court was then bound by mandatory Guidelines.  Later, ***Booker*** held they are only advisory.  125 S. Ct. at 757.

Under our post-***Booker*** precedent, we must remand unless the Government can prove this error was harmless under Federal Rule of Criminal Procedure 52(a).  ***United States v. Mares***, 402 F.3d 511, 520 n.9 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005).  Because the Government concedes the error was *not* harmless, we remand for resentencing.

### B.

For purposes of the remand, the district court did not clearly err in using Wroblewski's prior trafficking as relevant conduct. Its application of the Guidelines is reviewed as it was pre-***Booker***. ***United States v. Villegas***, 404 F.3d 355, 361-62 & n.7 (5th Cir. 2005). The court's interpretation of the Guidelines is reviewed *de novo*; its factual findings, only for clear error. ***United States v. Wall***, 180 F.3d 641, 644 (5th Cir. 1999).

As noted, the relevant-conduct finding is reviewed for clear error. ***United States v. Ocana***, 204 F.3d 585, 589 (5th Cir. 2000); ***Wall***, 180 F.3d at 644. A finding is clearly erroneous only if, based on our review of the record, we are "left with the definite and firm conviction that a mistake has been committed". ***In re Dennis***, 330 F.3d 696, 701 (5th Cir. 2003) (quoting ***Hibernia Nat'l Bank v. Perez***, 954 F.2d 1026, 1027 (5th Cir. 1992)). Along this line, a district court need only find by a preponderance of the evidence that a defendant committed unadjudicated relevant conduct. ***United States v. Bryant***, 991 F.2d 171, 177 (5th Cir. 1993); ***United States v. Mir***, 919 F.2d 940, 943 (5th Cir. 1990). Moreover, the district court is not limited to information that would be admissible in a criminal trial. ***United States v. Vital***, 68 F.3d 114, 120 (5th Cir. 1995).

In that regard, information in a PSR "generally bear[s] indicia of reliability sufficient to permit reliance thereon at sentencing". ***United States v. Gracia***, 983 F.2d 625, 629 (5th Cir.

1993). District courts have significant discretion in evaluating a PSR's reliability. *United States v. Young*, 981 F.2d 180, 185 (5th Cir. 1992), *cert. denied*, 508 U.S. 980 (1993). To challenge the information contained in a PSR, the defendant "bears the burden of demonstrating its untruth, inaccuracy, or unreliability". *Gracia*, 983 F.2d at 630. If a defendant fails to present evidence to rebut the PSR's findings, the district court may rely on the PSR without further inquiry or discussion. *Id.* at 629-30; *Vital*, 68 F.3d at 120; *Mir*, 919 F.2d at 943. Unlike a PSR, the unsworn assertions of defense counsel are not sufficiently reliable for the district court to consider in making its factual findings. *United States v. Chavez*, 947 F.2d 742, 746 (5th Cir. 1991).

In calculating the offense level, district courts are to consider other, uncharged offenses if they constitute "relevant conduct" related to the charged offense. U.S.S.G. § 1B1.3. Our court applies this concept broadly, "[p]articularly in drug cases". *Bryant*, 991 F.2d at 177. Relevant conduct includes "acts and omissions ... that were part of the same *course of conduct* or *common scheme or plan* as the offense of conviction". U.S.S.G. § 1B1.3(a)(2) (emphasis added); *United States v. Sanders*, 343 F.3d 511, 530 (5th Cir. 2003) (citing § 1B1.3(a)(2)).

The district court did not expressly find that Wroblewski's marijuana trafficking for Victor Estrada was part of a "common scheme or plan"; however, this finding was implicit in the court's

conclusion that it constituted relevant conduct. *See **Vital***, 68 F.3d at 118. Therefore, Wroblewski must show this finding was clearly erroneous. ***Ocana***, 204 F.3d at 589. (The Government claims Wroblewski's prior trafficking was both a "common scheme or plan" and part of the "same course of conduct"; because they are in the disjunctive, an affirmative finding on one basis obviates deciding the other.)

For multiple offenses to comprise a "common scheme or plan", "they must be substantially connected to each other by *at least one common factor*, *such as* common victims, common accomplices, common purpose, or similar *modus operandi*". U.S.S.G. § 1B1.3 cmt. n.9(A) (emphasis added); ***Sanders***, 343 F.3d at 530 (citing § 1B1.3 cmt. n.9(A)). The common-victims factor is not in play; other factors are discussed *infra*.

"Common accomplices" requires only that the alleged accomplices know and work with one another at the time of the earlier offense. *See **Wall***, 180 F.3d at 645. For example, in ***Wall***, this factor was *not* satisfied when the alleged accomplices did not know one another at the time of the earlier incident for which the defendant was convicted; the later incident for which the defendant's alleged accomplice was convicted could not be attributed to him. ***Id***.

The "common purpose" factor does not require that the purpose be defined narrowly. It has been met, for example, with the common

8

purpose of "the illegal removal and sale of timber" belonging to others.  *United States v. Anderson*, 174 F.3d 515, 527 (5th Cir. 1999).

A similar *modus operandi* exists where multiple offenses were committed in a similar manner.  The *modus operandi* in **Anderson** was "removing timber from land belonging to absentee landowners who would be less likely to discover the removal".  174 F.3d at 527. For this factor, other similarities may be suggestive of relevant conduct.  For example, the "source and type of drug" are relevant. *United States v. Bethley*, 973 F.2d 396, 401 (5th Cir. 1992) (noting that all cocaine was purchased from the same individual; and that the quantities the defendant sold were always measured in ounces); *see United States v. Moore*, 927 F.2d 825, 827-28 (5th Cir, 1991) (noting the defendant's continuing enterprise involving amphetamines).

Unlike a "same course of conduct" finding, no temporal requirement exists for finding a "common scheme".  *Moore*, 927 F.2d at 828.  A period of one or two years' inactivity is not a bar to finding such a scheme.  *See id.* ("There is no separate statute of limitations beyond which relevant conduct suddenly becomes irrelevant.");  *United States v. Robins*, 978 F.2d 881, 890 (5th Cir. 1992) ("[E]ven assuming this hiatus [of one and a half years] occurred, it was inadequate in duration to make the previous conduct irrelevant for sentencing purposes".).

9

As noted, only one common factor must exist for finding a common scheme for Wroblewski's drug trafficking. U.S.S.G. § 1B1.3 cmt. n.9(A). In this instance, however, it would not be clearly erroneous to find that each of the above-described factors exist.

Concerning common accomplices, Wroblewski became acquainted in 1997 with both Victor and Sergio Estrada; Sergio Estrada provided Wroblewski's initial contact with the organization. Although no evidence suggests Wroblewski met Ricardo Estrada prior to their initial negotiations in 1999 or 2000, Wroblewksi can work for the organization without a full awareness of its structure and the roles of each Estrada brother. *Cf. **United States v. Westbrook***, 119 F.3d 1176, 1189 (5th Cir. 1997) (explaining, in the context of a conspiracy conviction, that a defendant "need not know all the details of the unlawful enterprise ... so long as he knowingly participates in some fashion in [its] larger objectives"), *cert. denied*, 522 U.S. 1119 (1998).

For this factor, it appears that one, or both, of the other Estrada brothers served as accomplices for Wroblewski's work for Ricardo Estrada. In 1997, Sergio Estrada acted as a conduit for Wroblewski to begin working with Sergio Estrada's brother, Victor Estrada. Wroblewski's initial contact from Ricardo Estrada occurred shortly after he contacted Victor Estrada in 1999, requesting resumption of the trafficking. It can be inferred from this sequence of events that, when Wroblewski attempted to resume

10

working with Victor Estrada, he informed one or both of his brothers of Wroblewksi's interest, because Ricardo Estrada decided to use Wroblewski's services. Thus, Wroblewski's activities shared common accomplices; he worked for two brothers within the Estrada family's drug trafficking organization.

For a common purpose between Wroblewski's trafficking for Victor Estrada and for Ricardo Estrada, Wroblewski possessed for each brother the criminal purpose of smuggling a large quantity of marijuana from the border city of El Paso to large, interior United States cities. Wroblewski's activities for Victor and Ricardo Estrada were not identical, but their common purpose withstands clear-error review under this court's precedent. *See* **Anderson**, 174 F.3d at 527.

Finally, regarding a similar *modus operandi* for Wroblewski's activities for the Estrada brothers, several similarities exist between Wroblewski's drug trafficking trips for them. The trips originated in El Paso; Wroblewski drove and traveled alone; the trips typically had similar mid-Western destinations; both brothers paid Wroblewski thousands of dollars on a per-trip basis; each of the trips involved the same controlled substance, marijuana; and each trip involved large quantities (hundreds of pounds) of it.

Also key to the relevant-conduct finding's not being clearly erroneous is Wroblewski's failure to offer any evidence rebutting the PSR. **Gracia**, 983 F.2d at 629-30. For example, at sentencing,

11

Wroblewski could have tried to contradict the existence of a *modus operandi* by asserting that he used different modes of transportation for the two brothers. *See **Wall***, 180 F.3d at 645. Because Wroblewski failed to make this, or any other, showing, the district court's reliance on the PSR was *not* erroneous. ***Vital***, 68 F.3d at 120.

III.

For the foregoing reasons, the conviction is **AFFIRMED**; this matter is **REMANDED** for resentencing.

*CONVICTION AFFIRMED; REMANDED FOR RESENTENCING*