# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 11, 2025

Lyle W. Cayce
Clerk

No. 24-50247

United States of America,

*Plaintiff—Appellee*,

*versus*

Jeffrey Jerome Griffin,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:22-CR-23-1

_____

Before Jones and Graves, *Circuit Judges*, and Rodriguez, *District Judge*.[*]

Fernando Rodriguez, Jr., *District Judge*:[†]

After Jeffrey Jerome Griffin pled guilty to drug trafficking, the district court imposed a guideline range sentence of 121 months incarceration. On

_____

[*] United States District Judge for the Southern District of Texas, sitting by designation.

[†] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 24-50247

appeal, Griffin contends that the district court erred by finding that a second incident in which Griffin possessed methamphetamine and firearms constituted relevant conduct. Finding no clear error, we AFFIRM.

I.

In June 2021, an employee conducting a routine room cleaning at the Sleep Inn in Killeen, Texas, found a large quantity of crystal-like shards. The room was registered in Jeffrey Griffin's name.

Hotel staff contacted the Killeen police, who obtained a search warrant for the room. In the ensuing search, they found 997.46 grams of methamphetamine, a metal pipe, a glass pipe, and a yellow torch lighter.

The following morning around 1:30 a.m., an upset man later identified as Griffin insistently knocked on the hotel receptionist window, complaining that his room had been ransacked. Sleep Inn employees contacted police, who arrived and arrested Griffin based on an active warrant for Failure to Maintain Financial Responsibility, issued out of Killeen. In a search of Griffin's vehicle at the hotel, police found a glass pipe and 28 grams of marijuana edibles.

When officers interviewed Griffin at the Bell County jail, he stated that he and two friends had been in the hotel room taking and consuming methamphetamine. He had received a kilogram of the drug from a man named Rob.

The authorities did not immediately charge Griffin. Instead, they released him and attempted to use him as an informant in connection with other investigations. Those efforts failed.

In February 2022, a grand jury indicted Griffin for Possession with Intent to Distribute at Least 500 Grams of Methamphetamine, based on the June 2021 incident at the Sleep Inn. Two days later, the Killeen police and

No. 24-50247

United States Deputy Marshals executed a search warrant at Griffin's residence. Officers seized 76.5 grams of methamphetamine, two rifles, two pistols, 100 rounds of ammunition, and various other drugs and related paraphernalia. The authorities took Griffin and two other people into custody, and Griffin admitted that the methamphetamine and firearms belonged to him.

Griffin pled guilty without a plea agreement. He debriefed and had no prior convictions.

In addition to the 997 grams of methamphetamine that formed the basis for the offense of conviction, the Presentence Investigation Report held Griffin accountable for the 76.5 grams of the same drug seized at his home in February 2022, deeming that event as relevant conduct.[1] The PSR assessed a two-level enhancement, presumably under U.S.S.G. § 2D1.1(b)(1) and based on Griffin possessing firearms at his residence in February 2022. The firearm possession rendered him ineligible for a two-level reduction under U.S.S.G. § 5C1.2 (Safety Valve) and for a two-level reduction under U.S.S.G. § 4C1.1 for zero-point offenders. Griffin scored a Total Offense Level of 32, which, when coupled with Criminal History Category I, resulted in a sentencing guideline range of 121 to 151 months. A statutory minimum sentence of 120 months applied.

At sentencing, Griffin's counsel objected that the incident in February 2022 did not represent relevant conduct "under the guidelines or under the case law from the Fifth Circuit because it's not a common scheme or plan or the same course of conduct." Defense counsel noted the distinctions

─────────────────────

[1] Holding Griffin accountable for the methamphetamine seized in February 2022 did not increase his base offense level. *See* U.S.S.G. § 2D1.1(c)(5) (explaining that base offense level 30 applies to an amount more than 500 grams but less than 1.5 kilograms).

No. 24-50247

between the June 2021 and the February 2022 events. Eight months separated the incidents and the two events did not share a common location (hotel room versus private residence), a common drug weight (997 grams versus 76 grams), common co-conspirators, or a common presence of weapons (none at hotel versus multiple firearms at residence).

The Government contended that the methamphetamine seized in February 2022 represented relevant conduct, focusing on Griffin's "common purpose in both [incidents] to have enough methamphetamine to sell."

The district court overruled Griffin's objection without explanation, rendering the methamphetamine found in the February 2022 search relevant conduct. Based on this ruling, the district court implicitly found that Griffin possessed firearms in connection with the offense.

The district court adopted the factual findings and guideline calculations in the Presentence Investigation Report, and then sentenced Griffin to 121 months, at the low end of his sentencing guideline range.

Removing the February 2022 possession of methamphetamine and firearms from the calculus, Griffin would not have received the two-level upward adjustment under § 2D1.1(b)(1), and he would have qualified for a two-level reduction under § 4C1.1 (zero-point offender) and a two-level reduction under § 5C1.1 (safety valve). His Total Offense Level would have been 26, resulting in a sentencing guideline range of 63 to 78 months, with no applicable mandatory minimum sentence.

Griffin timely appealed.

## II.

When a defendant preserves his objections to a district court's findings that impact the application of the Sentencing Guidelines, this Court

reviews "the district court's interpretation of the Sentencing Guidelines de novo and its factual findings for clear error." *United States v. Schultz*, 88 F.4th 1141, 1143 (5th Cir. 2023). "The district court's determination of relevant conduct is a factual finding[.]" *United States v. Appellant 1*, 56 F.4th 385, 392 (5th Cir. 2022).

This standard requires affirmance unless "a review of all the evidence leaves this court with the definite and firm conviction that a mistake has been committed." *United States v. Torres-Magana*, 938 F.3d 213, 216 (5th Cir. 2019); *see also United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) ("The clear-error standard of review is a deferential one."). If the district court's factual findings "are plausible in light of the record as a whole[,]" then no clear error occurred. *United States v. Lopez*, 70 F.4th 325, 328 (5th Cir. 2023). "If, after reviewing the record, the district court's view of the evidence is plausible, the district court's decision must be affirmed even if the judges on this Court, sitting as the trier of fact would have weighed the evidence differently." *United States v. Burns*, 526 F.3d 852, 859 (5th Cir. 2008).

### III.

The district court did not commit clear error in finding that Griffin's possession of methamphetamine in February 2022 constituted relevant conduct.

Under the Sentencing Guidelines, relevant conduct for a drug trafficking offense includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and that were "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. §§ 1B1.3(a)(1)(A), (a)(2); *see also United States v. Moton*, 951 F.3d 639, 644 (5th Cir. 2020).

Here, the record provides no support for a finding of a common scheme or plan. "An unadjudicated offense is considered part of a common scheme or plan if it is substantially connected to the offense of conviction by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *United States v. Nava*, 957 F.3d 581, 585 (5th Cir. 2020) (internal quotation marks omitted). No evidence indicates that the criminal activity in June 2021 and February 2022 shared common accomplices or victims, a common building, or a common purpose beyond a general purpose to possess distribution-level amounts of methamphetamine, which is "insufficient to satisfy the common purpose factor." *United States v. Ortiz*, 613 F.3d 550, 557 (5th Cir. 2010).

The Court next considers whether the unadjudicated offense of February 2022 represented a common course of conduct with the criminal activity of June 2021, which formed the basis for the conviction. "Factors to consider in the course-of-conduct analysis include the degree of similarity and the regularity of the offenses, as well as the time interval between the offenses. A weak showing as to any one of these factors will not preclude a finding of relevant conduct; rather, when one of the above factors is absent, a stronger presence of at least one of the other factors is required." *Nava*, 957 F.3d at 586–87 (cleaned up).

The temporal factor provides significant support for the district court's finding. This Court has explained that a one-year interval between the offense of conviction and the unadjudicated offense supports a finding of a common course of conduct. *Lopez*, 70 F.4th at 329; *see also United States v. Ocana*, 204 F.3d 585, 590 (5th Cir. 2000) (characterizing a seven-month period between the offense of conviction and the unadjudicated conduct as "close temporal proximity"). Here, only eight months separated the June 2021 and February 2022 possessions of methamphetamine.

In contrast, the regularity factor provides no support for the district court's finding. This factor requires "evidence of a regular, i.e., repeated, pattern of similar unlawful conduct directly linking the purported relevant conduct and the offense of conviction." *United States v. Rhine*, 583 F.3d 878, 890 (5th Cir. 2009). "[A] continuous stream of drug activity" favors a finding of a common course of conduct. *United States v. Bourrage*, 138 F.4th 327, 356 (5th Cir. 2025) (involving numerous drug transactions between the offense of conviction and the unadjudicated offense). In the present matter, the PSR includes no evidence that Griffin possessed or trafficked methamphetamine other than in June 2021 and February 2022. It is true that after the first incident, the authorities released Griffin and attempted to employ him in ongoing investigations. The United States argues that based on this fact, the district court "could plausibly infer that Griffin, no longer cooperating with an investigation, had never ceased trafficking methamphetamine." The record, however, is silent regarding Griffin's cooperation with authorities or any activity by him between June 2021 and February 2022. The omitted information precludes any inference that he engaged in drug transactions during this period.

Finally, the similarity factor provides some support for a finding of a common course of conduct. The similarity analysis asks "whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind." *United States v. Wall*, 180 F.3d 641, 646 (5th Cir. 1999). "To determine whether the offenses are similar, we consider whether drug offenses share a common source, supplier, accomplice, destination, or *modus operandi*." *United States v. Rangel*, 149 F. App'x 254, 258 (5th Cir. 2005) (per curiam) (citing *Wall*, 180 F.3d at 646). Here, the record contains no evidence establishing or supporting an inference that Griffin had a common source or supplier for

both amounts of methamphetamine. Griffin identified his source for the methamphetamine that he possessed in June 2021, but not for the drugs seized in February 2022. Still, in both instances, Griffin possessed a distributable amount of methamphetamine, and did so in the same geographical area (Killeen), with multiple people present. While the 76 grams that he possessed in February 2022 is far less than the 997 grams that he possessed in June 2021, the district court could plausibly infer that Griffin intended both amounts for distribution, rather than for personal use. For example, this Court has recognized amounts significantly less than 76 grams of methamphetamine to be distributable amounts. *See, e.g., United States v. Anguiano*, 27 F.4th 1070, 1074 (5th Cir. 2022) (noting that possession of 54 grams of methamphetamine was "an amount that does not suggest personal use only"); *United States v. Dickey*, 102 F.3d 157, 160 n.3 (5th Cir. 1996) ("Methamphetamine is used in five to ten milligram doses.").

Because the relevant factors of temporal proximity and similarity outweigh the lack of regularity, the record contains sufficient evidence to render the district court's implicit finding of a common course of conduct plausible. In analogous cases, this Court has affirmed a finding of relevant conduct when the record contained evidence demonstrating close temporal proximity and some similarity between the incidents at issue, even in the absence of regularity. *See Nava*, 957 F.3d at 587–88; *United States v. Gremillion*, 15 F.3d 1079 (5th Cir. 1994) (per curiam) ("[T]he geographical and temporal proximity to the first offense led to a reasonable inference that Gremillion was again attempting to distribute the drug.").

*Nava* is illustrative. In that case, when authorities pulled over a truck registered to Nava, but driven by someone else, they discovered liquid methamphetamine in the gas tank. Nava denied any involvement and offered to provide agents with information about cocaine trafficking perpetrated by patrons of a bar he owned. He later admitted to being involved in the cocaine

trafficking ring, and agents discovered that he had offered them false information about the cocaine trafficking routes "in an apparent effort to maintain the benefits of his informant contract without imperiling his drug business." *Nava*, 957 F.3d at 584. A jury found Nava guilty of possession with intent to distribute cocaine. The district court then found that the methamphetamine found in Nava's gas tank represented relevant conduct. Nava challenged this finding on appeal, but this Court affirmed, finding "robust temporal proximity and evidence of similarity across the offenses." *Id*. at 587–88. While the possession of methamphetamine and cocaine involved different trafficking rings and different locations, "the similar geographical pattern and close temporal proximity of the transactions [ ] convince us that Nava's role across the transactions was similarly supervisory." *Id*.

Comparing the matter before us to *Nava*, the record as to Griffin provides stronger support for the finding of relevant conduct. Both cases involved drug transactions well within the one-year benchmark for temporal proximity. And while *Nava* concerned two different controlled substances, Griffin possessed distributable amounts of methamphetamine in both instances. As the record in *Nava* rendered the finding of relevant conduct plausible, the record before us does as well.

Griffin relies on various decisions in which this Court reversed the district court's finding of relevant conduct. In those matters, however, the record contained no evidence supporting any of the three factors–i.e., temporal proximity, regularity, *or* similarity. *Rhine*, 583 F.3d at 891 ("In sum, Rhine's alleged participation in the Fish Bowl activities cannot be considered part of the same course of conduct as his instant offense, as temporal proximity, similarity, and regularity are all lacking."); *Wall*, 180 F.3d at 647 ("The temporal distance between the offenses, the lack of regularity, and the weak similarities between the offense of conviction and the later offenses

No. 24-50247

compel us to conclude that the later offenses cannot properly be considered as relevant conduct for purposes of sentencing Wall."); *United States v. Miller*, 179 F.3d 961, 966–67 (5th Cir. 1999) (finding that the prior drug activity was "relatively remote in time" and that neither similarity nor regularity were present); *see also United States v. Culverhouse*, 507 F.3d 888, 897 (5th Cir. 2007) ("The offenses in this case lack the temporal proximity, similarity, and regularity necessary to prove a common course of conduct.").

The district court plausibly found that Griffin's possession of methamphetamine in February 2022 represented a common course of conduct with his possession of the same drug in June 2021. As a result, the district court properly applied the Sentencing Guidelines by holding Griffin accountable for the methamphetamine that he possessed in February 2022, and by taking into account that he possessed firearms in connection with that incident.

IV.

For the foregoing reasons, we AFFIRM the imposed sentence.