# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 7, 2010

No. 09-60051

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff – Appellee

v.

SAMANTHA LONGSTREET

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Mississippi

Before GARWOOD, SMITH, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Samantha Wesley Longstreet was sentenced to forty-eight months' imprisonment for trafficking firearms and for making a false statement in connection with the purchase of firearms. On appeal, she challenges the district court's application of the U.S. Sentencing Guidelines on three separate grounds. We affirm in part, vacate in part, and remand for resentencing.

## FACTS AND PROCEEDINGS

In 2008, Longstreet pled guilty to one count of conspiracy to traffic and transfer firearms and one count of making false statements in connection with the purchase of a firearm, each of which carries a maximum imprisonment term of five years. *See* 18 U.S.C. §§ 371, 922(a)(5), 922(a)(6). Beginning in 1998,

No. 09-60051

Longstreet's then-boyfriend and eventual husband, Kris Longstreet ("Kris"), started purchasing guns in Mississippi in order to trade them for money and drugs with individuals in Chicago and to protect his own drug distribution activities. He purchased the guns from classified advertisers and pawn shops, and, to avoid detection by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, often employed female associates as "straw purchasers." From 2001 to 2003, one such purchaser was the defendant, Longstreet. The evidence showed that she purchased at least forty-five guns on Kris's behalf. For each purchase she would falsely state on ATF Form 4473 that she was the actual purchaser of the gun, when she knew that Kris intended to trade it for money and drugs in Chicago.

Longstreet was present during straw purchases made by other women on behalf of Kris. In addition, between 2001 and 2005, Longstreet traveled to Chicago with Kris to consummate the firearm transactions, and she knew that the transferees were involved in illegal drug trafficking. Longstreet further knew that the drugs Kris received for the guns were ultimately brought back to Mississippi for distribution. Kris admitted to trafficking more than 300 firearms from 1998 to 2005.

At sentencing, the district court calculated a base offense level of twelve and a criminal history category of II, based on two misdemeanor sentences from 2000 and 2007. It increased the offense level by four based on a finding that Longstreet possessed or transferred firearms with knowledge, intent, or reason to believe that they would be used in connection with another felony offense. *See* U.S.S.G. § 2K2.1(b)(6).[1] It further increased the offense level by ten after finding that Longstreet's offense involved more than 200 firearms. *See* U.S.S.G. § 2K2.1(b)(1)(E). After a three-level reduction for acceptance of responsibility,

---

[1] The 2004 edition of the Guidelines Manual was used at sentencing. In that edition, § 2K2.1(b)(6) was codified at § 2K2.1(b)(5).

2

No. 09-60051

a sentencing range of fifty-one to sixty-three months resulted.  The district court granted the government's motion for a downward departure and sentenced Longstreet to concurrent forty-eight month sentences.  She timely appealed.

## STANDARD OF REVIEW

"This court reviews de novo the district court's guidelines interpretations and reviews for clear error the district court's findings of fact." *United States v. Le*, 512 F.3d 128, 134 (5th Cir. 2007).  "Under the clearly erroneous standard, we will uphold a finding so long as it is plausible in light of the record as a whole." *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009) (quotation omitted). "However, a finding will be deemed clearly erroneous if, based on the record as a whole, we are left with the definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted).

## DISCUSSION

Longstreet presents three challenges to her sentence.  She contends that the district court (1) erroneously included her 2007 conviction in its criminal history calculation; (2) should not have assessed a four-level increase based on her knowledge that the guns would be used in another felony offense; and (3) erroneously attributed over 200 firearms to her as relevant conduct.

## I.    Criminal History Calculation

Longstreet  first challenges the district court's assessment of a criminal history point based on her 2007 state court conviction for contributing to the

delinquency of a minor.[2]  When Longstreet appeared for trial, the state court agreed to dismiss the charge upon Longstreet's payment of seventy dollars in court costs.  Longstreet failed to pay the costs, and, on this basis, the state court found her guilty.   On appeal, Longstreet argues that there was never an "adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*," by the state court, as required to constitute a "prior sentence" for criminal history purposes.  *See* U.S.S.G. § 4A1.2(a)(1).   The government, citing the Supreme Court's decision in *Custis v. United States*, contends that Longstreet's argument amounts to an impermissible collateral attack on a prior conviction. 511 U.S. 485 (1994).

Although Longstreet does not frame her contention as an attack on the conviction's validity, to accept her argument would imply that the state court's finding of guilt was improper and thus that the conviction was invalid. Longstreet's challenge is therefore properly characterized as a collateral attack on the prior conviction.  Application note 6 to U.S.S.G. § 4A1.2 states that "this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any rights otherwise recognized in law."   Longstreet has not identified any legal right entitling her to the collateral attack she seeks to make.  Furthermore, in *Custis*, the Court held that the Constitution requires collateral review of a defendant's prior conviction used to enhance a federal sentence only when the defendant alleges

---

[2] Although the government concedes that the record does not contain a copy of the judgment of conviction, Longstreet does not argue that there was not adequate evidence that the conviction existed.  Even construing her present argument as an attack on the conviction's existence, she did not make this argument in the district court.  Our review would therefore be for plain error, *see e.g.*, *United States v. Rodriguez-Parra*, 581 F.3d 227, 229 (5th Cir. 2009), *cert. denied*, 78 U.S.L.W. 3841 (U.S. Feb. 22, 2010) (No.09-8336), which has not been shown. We also note that this court has previously affirmed the inclusion of a prior conviction in a defendant's criminal history calculation where the record contained no copy of the judgment and it was not argued below that the conviction was not adequately evidenced.  *See United States v. Ramirez*, 367 F.3d 274, 276-77 (5th Cir. 2004).

that the conviction was obtained in violation of her Sixth Amendment right to counsel. *Id.* at 495-97; *see also Daniels v. United States*, 532 U.S. 374, 382 (2001).

In a number of unpublished decisions following *Custis*, this court has refused to entertain collateral attacks on prior state convictions made during federal sentencing proceedings when, as here, the defendant does not allege that the prior conviction was uncounseled. *See, e.g.*, *United States v. Castellanos*, 226 F. App'x 410, 411 (5th Cir. 2007) (unpublished); *United States v. Moore*, 281 F.3d 1279, at *3 (5th Cir. 2001) (unpublished table decision); *United States v. Galvan-Zapata*, 233 F.3d 574, at *2 (5th Cir. 2000) (unpublished table decision); *cf. United States v. Gonzales*, 79 F.3d 413, 426-27 (5th Cir. 1996) ("Except in the limited circumstance in which the prior conviction was obtained in violation of the right to have counsel appointed, a defendant has no constitutional right to challenge prior convictions used to enhance a currently imposed sentence."). Our sister circuits have adopted the same rule.[3]

We therefore hold that, absent an allegation that the defendant was denied counsel in the prior proceeding, a district court sentencing a defendant may not entertain a collateral attack on a prior conviction used to enhance the sentence unless such an attack is otherwise recognized by law. Accordingly, Longstreet may not challenge the validity of her 2007 conviction, and the district court did not err by including it in the criminal history calculation.[4]

---

[3] *United States v. Munoz*, 36 F.3d 1229, 1237 (1st Cir. 1994); *United States v. Jones*, 27 F.3d 50, 52 (2d Cir. 1994); *United States v. Thomas*, 42 F.3d 823, 824 (3d Cir. 1994); *United States v. Bacon*, 94 F.3d 158, 163 (4th Cir. 1996); *United States v. Covarrubias*, 65 F.3d 1362, 1372 (7th Cir. 1995); *United States v. Moore*, 245 F.3d 1023, 1025 (8th Cir. 2001); *United States v. Fondren*, 54 F.3d 533, 534-35 (9th Cir. 1994); *United States v. Garcia*, 42 F.3d 573, 581 (10th Cir. 1994); *United States v. Phillips*, 120 F.3d 227, 231 (11th Cir. 1997).

[4] We need not address the government's alternative argument, which likens Longstreet's conviction to a "deferred prosecution," countable as a diversionary disposition under U.S.S.G. § 4A1.2(f).

## II.    Connection to Another Felony Offense

Longstreet was assessed a four-level increase under U.S.S.G. § 2K2.1(b)(6) based on the district court's finding that she knew that the guns were being transferred to individuals engaged in illegal drug distribution in Chicago. She argues that this increase was erroneous for two reasons. First, she contends that she did not know the guns would be used in connection with other felonies. This contention is belied by the record. At the plea hearing, Longstreet admitted that she purchased guns for Kris knowing that he would trade them for money and drugs in Chicago to individuals engaged in the drug trade. She further admitted that on multiple occasions, she accompanied Kris to Chicago and understood that he planned to distribute the drugs he received in exchange for the guns. There was considerable evidence that Longstreet knew the guns would be used in other felony offenses.

Second, Longstreet argues that she did not personally transfer the guns to the Chicago individuals, and that therefore the enhancement was improper. She cites *United States v. Askew* for the proposition that a non-seller defendant is not subject to the § 2K2.1(b)(6) increase. 193 F.3d 1181, 1184 (11th Cir. 1999). Far from adopting the narrow interpretation urged by Longstreet, *Askew* confirms that a non-seller's offense level may be enhanced so long as she "knew or had reason to believe the guns would be used to commit another felony." *Id.* at 1185. Unlike the situation in *Askew*, where the defendant "[was] not the actual seller and [knew] nothing about the circumstances surrounding the sales," the factual basis demonstrates that Longstreet "had as much knowledge about how the buyers would use the firearms as the actual seller did." *Id.* at 1184-85; *see United States v. Caldwell*, 448 F.3d 287, 292 (5th Cir. 2006) (stressing that a defendant's reasonable belief that a gun would be used in a felony, rather than actual use in a specific felony, is all that is required under § 2K2.1(b)(6) and that

the district court may "make common-sense inferences from the circumstantial evidence"). There was no error in the four-level increase under § 2K2.1(b)(6).

## III.    Number of Firearms

Kris admitted to government agents that he trafficked over 300 guns to Chicago from 1998 to 2005. Based on this evidence, the district court found that Longstreet's offense involved over 200 firearms, triggering a ten-level increase pursuant to U.S.S.G. § 2K2.1(b)(1)(E). This determination of relevant conduct is a factual finding reviewed for clear error. *Ekanem*, 555 F.3d at 175. Longstreet asserts that the increase was erroneous because (1) she did not join the conspiracy until 2001 and was therefore not responsible for the entire period of Kris's activities; and (2) she may only be held accountable for the forty-five guns she personally purchased.

Longstreet's latter contention lacks merit because she may be held accountable for "all reasonably foreseeable acts and omissions of others in furtherance of . . . the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). It was thus proper for the district court to have considered acts beyond Longstreet's actual purchases, so long as those acts were in furtherance of the same course of conduct or common scheme or plan as the conspiracy. *See United States v. Culverhouse*, 507 F.3d 888, 895 (5th Cir. 2007).

Longstreet's first contention merits further consideration. Count One of the indictment, to which Longstreet pled guilty, charged a conspiracy from July 2000 through October 2005. The government's factual basis, however, provided that Longstreet became involved, at the earliest, in June 2001 and continued through 2005. Similarly, the PSR does not tie any of Longstreet's conduct to time periods prior to 2001. The government's evidence showed that from 2001 through 2005, members of the conspiracy purchased 121 guns and distributed approximately 155 guns. Only by considering Kris's activities during undefined

time periods, including periods from 1998 through 2000, does the number of guns total his admitted figure of 300.

The district court deemed Longstreet to have participated in the entire scope of Kris's activity—including the period from 1998 through 2000. It found that Kris's overall activities constituted a "common scheme or plan" under U.S.S.G. § 1B1.3(a)(2) and that Longstreet acted in furtherance thereof. In support, it stated that Longstreet "began dating" Kris in 1999 and that there was a "sufficient connection" between them to make her accountable for his conduct. There was, however, no evidence showing that Longstreet conspired with Kris prior to 2001. Although Longstreet did travel to Chicago with Kris and did accompany other associates during their straw purchases of firearms, there was no evidence that any of these acts predated 2001. "A defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant's joining the conspiracy, even if the defendant knows of that conduct." U.S.S.G. § 1B1.3 cmt. n.2; *see United States v. Reinhart*, 357 F.3d 521, 526 (5th Cir. 2004). Absent particularized findings that Longstreet was actually involved in Kris's activities prior to 2001 or that Longstreet was otherwise responsible for more than 200 firearms from 2001 through 2005, the present record provides no justifiable basis for the district court's assessment of the ten-level increase. *See United States v. Hammond*, 201 F.3d 346, 351 (5th Cir. 1999) (requiring clear findings of reasonably foreseeable acts within the scope of a conspiracy to hold a defendant accountable for third-party conduct). The district court's application of § 2K2.1(b)(1)(E) lacks support in the record and therefore constitutes clear error. Longstreet's sentence must therefore be vacated and the case remanded for resentencing.

No. 09-60051

## CONCLUSION

For the foregoing reasons, the district court's criminal history calculation and application of U.S.S.G. § 2K2.1(b)(6) are AFFIRMED, its finding that Longstreet's offense involved more than 200 firearms is VACATED, and the case is REMANDED for resentencing.