In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3115

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

INGREL ESTIEL ORTEGA-GALVAN,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 CR 349-1—**Suzanne B. Conlon**, *Judge*.

ARGUED APRIL 25, 2012—DECIDED MAY 29, 2012

Before POSNER, SYKES, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*.  In this appeal from a 41-month sentence for entering the United States without authorization after having been removed, 8 U.S.C. § 1326(a), we consider whether and when a district judge can reduce a defendant's sentence upon discovering an error in an earlier conviction of the defendant, a conviction that if left undisturbed would support the higher sentence.

Several of the circuits, relying on *Custis v. United States*, 511 U.S. 485 (1994), have held that the judge may not do that, at least (a potentially critical qualification, as we'll see) as part of his calculation of the defendant's guidelines range. *United States v. Aguilar-Diaz*, 626 F.3d 265, 269 (6th Cir. 2010); *United States v. Longstreet*, 603 F.3d 273, 276-77 (5th Cir. 2010); *United States v. El-Alamin*, 574 F.3d 915, 928 (8th Cir. 2009); *United States v. Sharpley*, 399 F.3d 123, 126 (2d Cir. 2005); *Mateo v. United States*, 398 F.3d 126, 134 n. 7 (1st Cir. 2005). The Court in *Custis* had held that a conviction used on the authority of the Armed Career Criminal Act, 18 U.S.C. § 924(e), to enhance the defendant's sentence could not be attacked in the sentencing proceeding unless the defendant hadn't had counsel in the earlier case in which he was convicted. 511 U.S. at 496. There is also a statutory exception to the *Custis* rule, but, being confined to drug sentencing, it is inapplicable to this case. 21 U.S.C. § 851(c).

We had held before the *Booker* decision restored the sentencing discretion taken away from district judges by the Sentencing Reform Act of 1987 that "sentencing hearings are not the appropriate forum to examine the validity of prior convictions even though such convictions may be used to enhance a present sentence." *United States v. Mitchell*, 18 F.3d 1355, 1358 (7th Cir. 1994); see also, e.g., *United States v. Jiles,* 102 F.3d 278, 280-81 (7th Cir. 1996); *United States v. Martinez-Martinez*, 295 F.3d 1041, 1045 (9th Cir. 2002). But we have not revisited the question. The cases cited above are post-*Booker*, but harbor a critical ambiguity: it is unclear whether they

preclude the sentencing judge from considering the validity of a prior conviction at *any* point in the sentencing process, or just not when he is computing the defendant's guidelines range. We think the latter is the sounder position, though with a qualification discussed at the end of the opinion.

The defendant, a Mexican citizen, had come to the United States with his family in 1991, when he was a young child. In 2006 he pleaded guilty in an Illinois court to criminal sexual abuse for having had sex with a 13-year-old girl. On the basis of his public school records, which showed his age as 19 at the time of the crime, the crime was a felony, 720 ILCS 5/12-15(a), (d) (2000) (now 720 ILCS 5/11-1.50(a), (d) (2011)); had he been under 17 it would have been a misdemeanor. 720 ILCS 5/12-15(b)-(d) (2000) (now 720 ILCS 5/11-1.50(b)-(d) (2011)). He was sentenced to 24 months' probation and was deported to Mexico a month after the sentencing. About a year later he returned to the United States illegally, was soon apprehended, and was again deported, but not prosecuted. Within a few months he returned again (and again without authorization) and this time was prosecuted for illegal reentry, pleaded guilty, and was given the 41-month sentence (along with 3 years of supervised release conditional on his not reentering illegally during that period) that he has appealed to us.

The probation service calculated his total offense level as 21. Sixteen of the 21 points were for his having been previously removed from the country after having been convicted of a felony crime of violence. U.S.S.G. § 2L1.2(b)(1)(A)(ii). The base offense level for illegal

reentry is 8, *id.*, § 2L1.2(a), and 8 + 16 = 24, but Ortega received a 3-point reduction for acceptance of responsibility.

Although his felonious encounter with the 13-year-old did not involve violence, the parties rightly assume that it was a violent felony under the guidelines. Application Note 1(B)(iii) to section 2L1.2 defines "crime of violence" to include "forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced)," plus *"statutory rape [and] sexual abuse of a minor."* See *United States v. Ramirez*, 675 F.3d 634, 639 (7th Cir. 2011) (per curiam); *United States v. Diaz-Corado*, 648 F.3d 290, 292-93 (5th Cir. 2011). Ortega's sexual felony was statutory rape. True, that the victim be a minor is not an element of the crime of which he was convicted, only that "the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent." 720 ILCS 5/12-15(a)(2) (2000) (now 720 ILCS 5/11-1.50(a)(2)(2011)). But that condition is satisfied when as in this case the victim is only 13. And true, we've held that the crime defined in a similar California statute was not a "violent felony" under 28 U.S.C. § 924 because the statute did not require that the defendant use force; even a light sexual touch might violate it. *United States v. Goodpasture*, 595 F.3d 670, 670-71 (7th Cir. 2010). And that is true of the Illinois statute as well. But section 924 does not designate "sexual abuse of a minor" as a violent felony, and U.S.S.G. § 2L1.2 Application Note 1(B)(iii) does.

The probation service calculated the defendant's criminal history as a category IV. The combination of a total offense level of 21 and a criminal history category of IV yielded a guidelines range of 57 to 71 months of imprisonment. Had it not been for the sexual felony, the defendant's criminal history category would have been only II (based on a burglary conviction and a conviction for possession of marijuana), and his guidelines range (given his total offense level of 21) would have been 41 to 51 months instead of 57 to 71.

But there is a novel twist. According to the defendant's Mexican birth certificate, which the government concedes is authentic, he was only 16 when he committed the sex offense, and so he should have been convicted of a misdemeanor, not a felony. His lawyer asked the district judge to eliminate the 16-point felony enhancement from his total offense level and also eliminate the felony from his criminal history. These two adjustments would have brought his guidelines range from 57 to 71 months down to 0 to 6 months. The judge refused to make the first adjustment, but made the second, reducing the defendant's guidelines range to 41 to 51 months; and she sentenced him at the bottom of it.

The appeal argues that she should have given the defendant a lower sentence, first because having come to the United States as a small child he is culturally American, not Mexican, and so will experience more than the usual hardship if he is exiled to Mexico. That is a bad argument, properly rejected by the district judge.

It is his attachment to the United States that incites his illegal returns after removal, so that attachment is as strong an argument for a longer sentence as for a shorter one. It is true that the guidelines say that "there may be cases in which a downward departure may be appropriate on the basis of cultural assimilation." U.S.S.G. § 2L1.2 Application Note 8. But a recidivist returner, convicted as the defendant in this case was of a crime upon his return to the United States (he was convicted of possessing marijuana after his second illegal return) is not an appealing candidate for such consideration.

His second argument is that the judge should have made both adjustments to the guidelines range that he requested—reducing his total offense level as well as placing his criminal history in the lower category—on the authority of 18 U.S.C. § 3553(a), which lists factors that a judge must consider in sentencing if asked to do so, notwithstanding the guidelines. The argument rests on a misunderstanding. The regime created by the *Booker* decision, which greatly enlarged the sentencing discretion of federal district judges, allows a sentencing judge to give a sentence outside the guidelines range if persuaded by factors listed in section 3553(a) that a higher or lower sentence would be more appropriate. But the judge must first compute the guidelines range correctly, and only then decide, on the basis of a weighing of the statutory factors, whether to give a sentence outside the range. *Pepper v. United States*, 131 S. Ct. 1229, 1241 (2011); *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) ("district courts must treat the Guidelines as the 'starting point and the initial benchmark,'" quoting

*Gall v. United States*, 552 U.S. 38, 49 (2007)); *United States v. Hill*, 645 F.3d 900, 905 (7th Cir. 2011).

Had the district judge in this case, in computing the defendant's total offense level, shaved points off because the felony conviction was erroneous, she would have been failing to treat the guidelines as "the starting point and the initial benchmark," because determining whether a conviction that affects the calculation of the total offense level is valid is not a permissible step in that computation. But the judge didn't do that; she altered just his criminal history on the basis of the error; and whether in doing that she exceeded her authority is an unsettled question.

Section 4A1.3(b) of the guidelines provides that "if reliable information indicates that the defendant's criminal history category *substantially over-represents the seriousness of the defendant's criminal history* or the likelihood that the defendant will commit other crimes, *a downward departure* may be warranted." The words we've italicized imply that when the judge decides whether to act on the basis of "reliable information" he's already calculated the guidelines range because determining the defendant's criminal history category is a step in that calculation. And we held in *United States v. Lucas*, 670 F.3d 784, 791-92 (7th Cir. 2012), with specific reference to criminal history, that the departure authorized by section 4A1.3(b), which can be applied by analogy during the sentencing judge's consideration of the factors listed in section 3553(a), comes after rather than before the guidelines range is determined, though

earlier we had left the question open, noting a conflict among other circuits. *United States v. Guyton*, 636 F.3d 316, 319 and n. 2, 321 (7th Cir. 2011); compare *United States v. Barney*, 672 F.3d 228, 231-32 (3d Cir. 2012), and *United States v. Pembrook*, 609 F.3d 381, 384-87 (6th Cir. 2010), reaching the same conclusion as *Lucas*, with *United States v. Munn*, 595 F.3d 183, 192-93 (4th Cir. 2010), reaching the opposite conclusion. If the interpretation in the *Lucas* decision is correct, the sentencing judge exceeded her authority.

Section 1B1.1 (Application Instructions) tugs the other way, because its subsection (a)(6) tells the judge to determine the criminal history category "as specified in Part A of Chapter Four" as a step in calculating the guidelines range, and section 4A1.3(b) is in part A of chapter 4. Contradicting this statement, however, is section 1B1.1 Commentary, Application Note 1(E)(ii): "'Departure' means . . . for purposes of §4A1.3 . . . assignment of a criminal history category other than the otherwise applicable criminal history category, *in order to effect a sentence outside the applicable guideline range*" (emphasis added). Thus a change in the criminal history category is a "departure" that takes the sentence "outside the applicable guideline range." This is the clearest statement in the guidelines on the matter, is consistent with *Lucas*, and according to it the district judge changed the applicable guideline range after it had been correctly calculated by the probation service. She changed it from 57-71 months to 41-51 months.

This characterization of her action is supported by the fact that a federal judge has no authority to treat a state

criminal conviction as invalid in a sentencing pro-
ceeding unless the conviction has been successfully
challenged by an authorized method of collateral attack
on (that is, a post-appeal challenge to) a state convic-
tion. *Custis v. United States*, *supra*, 511 U.S. at 497; see
also, e.g., *United States v. Longstreet*, *supra*, 603 F.3d at 276.
Even if a judge could alter a guidelines range (as
opposed to a sentence) because of dissatisfaction with
the criminal history correctly computed under the guide-
lines, he could not do that on the basis of a finding
that a conviction recorded in the defendant's criminal
history was in error—that the defendant should have
been acquitted or received a different sentence or (as in
this case) been convicted of a lesser crime.

It's true that the defendant isn't trying to vacate the
conviction. But he is trying to eliminate a part of the
punishment that resulted from it. That part—real though
probabilistic rather than certain—was the recidivist
enhancement that the conviction would trigger in the
calculation of the federal sentencing guidelines range
if the defendant was ever convicted of a federal crime.
By eliminating the effect of the state felony conviction
on his criminal history in calculating the range, the
district judge nullified a part of the punishment for
the felony; and the defendant wants us to order her
to nullify another part, the effect on the offense level,
and in sum reduce his minimum federal guideline
sentence from 57 months to 0 months. The judge could
make neither adjustment, because either would con-
stitute in effect a partial vacation of the defendant's state
conviction.

But remember that a judge doesn't have to give the guidelines sentence, but only compute it correctly and consider it thoughtfully before deciding whether to impose a different sentence. The defendant's guidelines range was and is 57 to 71 months, but the statutory minimum is 0 months, and the judge could go all the way down to 0 if she had good reasons for doing so.

Obviously the judge did not feel bound by the guidelines, because she sentenced the defendant below the guidelines range. (The base of the range was 57 months; she sentenced him to 41.) Insofar as she thought that she could alter his criminal history in calculating the range this would be a ground for a remand, instructing her that while she can sentence below the range (if she has acceptable reasons for doing so) she cannot alter it. But it would be a ground urged by the government—it is the government that is harmed if a judge improperly reduces a defendant's guidelines range, and the government has not cross-appealed. The defendant can complain if the judge mistakenly thinks there is a floor under the sentence. But the judge in this case didn't think that. She knows—every federal judge knows—that a judge can sentence below the guidelines range for any defensible reason. And she knew there was no statutory minimum in this case. Before *Booker* the permissible grounds for sentencing below or above the guidelines range were circumscribed by the guidelines themselves, which permitted only limited departures; but no more. The defendant asked the judge to go *way* below. She refused, unsurprisingly given the defendant's two illegal returns to this country, the second within just

a few months of removal. It seems he doesn't take removal seriously. He is an immigration yo-yo, see *United States v. Carlos-Colmenares*, 253 F.3d 276, 279 (7th Cir. 2001), a veritable revenant. The zero imprisonment would merely confirm him in his belief already demonstrated that he needn't take seriously the crime of unauthorized entry by a previously removed alien. The judge made clear that the risk of further illegal returns was the decisive consideration in her decision to give him a significant prison sentence.

There is nothing illogical or unreasonable—nothing inconsistent with the broad and vague standard of section 3553(a)—about giving a defendant a below-guidelines sentence because his guidelines range had been elevated as the result of an erroneous conviction. Section 3553(a)(1) instances among the factors for a sentencing judge to consider the "*history* and characteristics of the defendant" (emphasis added). Section 3661 states that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." In *United States v. Sonnenberg*, 628 F.3d 361, 368 (7th Cir. 2010), citing section 3661, we said that "nothing in the law would require the court, in exercising its judgment and discretion under § 3553(a), to close its eyes to the actual conduct that led to the prior conviction." Even more emphatically, we said in *United States v. Miranda*, 505 F.3d 785, 795 (7th Cir. 2007), that when the defendant "sought to enter evidence on the context of these two

prior convictions, the district court repeatedly stated that it could not 'revisit' or 'look beyond' those convictions, apparently construing [his] argument as a collateral attack on the prior convictions. But [he] was not collaterally attacking those convictions; rather, he was asking the court to consider an argument under section 3553(a)(1) that those convictions arose out of his mental health issues and that his criminal history category overstated both the seriousness of his prior conduct and the likelihood that he would commit further crimes. The district court is free to accept or reject that theory based on the evidence before it, using the factors set forth in section 3553(a)(1) and, by way of analogy, sections 4A1.3(b) and 5K2.13 of the guidelines."

Yet for a sentencing judge, invoking the broad sentencing discretion restored by the *Booker* decision, to peek behind a conviction used in calculating a guideline range and upon finding the conviction defective—though as in this case it has not been challenged in a proper collateral proceeding—to discount its significance, which is equivalent as we said to a partial vacation of the conviction, rubs against the limitations on collateral attack on state convictions. Were it to become a practice, sentencing hearings could become distended by challenges to prior convictions. This case is unusual because the government tacitly concedes that the defendant's prior felony conviction that jacked up his sentencing range from 0 to 6 months to 57 to 71 months was erroneous. For the government concedes the authenticity of the Mexican birth certificate, and neither party requested a factual hearing. If in the

next case a defendant asks for a factual inquiry into the soundness of a previous conviction, rather than just a glance at a birth certificate conceded to be valid, the judge would be entitled, and well advised, to refuse—and perhaps required to refuse, as held in *United States v. Delacruz-Soto*, 414 F.3d 1158, 1164 (10th Cir. 2005) (in tension however with our *Sonnenberg* and *Miranda* decisions), though we needn't decide that in this case.

In sum, although the judge erred in tinkering with the guidelines range, the error was harmless. She gave the defendant the sentence she wanted to give him irrespective of the guidelines, and the sentence is consistent with sections 3553(a) and 3661 of the Criminal Code. The judgment is therefore

AFFIRMED.